## F. A. BROOKS v. THE STATE.

### No. 2260.   Decided December 19, 1900.

**1.  Joint Defendants—Second Severance—Res Adjudicata.**

Where, on a former trial, three joint defendants charged with murder were allowed a severance, this previous severance was not res adjudicata on a motion for severance at a subsequent trial.  Upon subsequent trials, the parties have the right to change the order of trial if they consider it to their interest to do so.

**2.  Murder by Poison—Indictment—Charge.**

Where the indictment was drawn under provisions of articles 647 and 649, Penal Code, making it murder to intentionally cause death by mingling poison in a drink, intending it to be drunk by deceased; and, the indictment charged defendant with mingling certain poison called "laudanum," "morphine," and "opium" with beer with intent to murder, etc., defendant knowing that deceased would drink and swallow said poisoned beer, Held, that a charge of court which instructed the jury to find defendant guilty, etc., if he unlawfully gave to deceased, and caused him to swallow the poison mixed with beer, was eroneous in that it submitted an issue different from that charged, and authorized a conviction without requiring the jury to find the essential fact that defendant "mingled" the poison with the beer, as charged in the indictment.

**3.  Same—Verdict.**

Though murder by poison is per se murder in the first degree, yet a verdict of guilty, in such a case, without expressly finding the degree of murder, is, under provisions of article 712, Penal Code, wholly insufficient.

APPEAL from the Criminal District Court of Galveston.   Tried below before Hon. A. C. ALLEN.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant F. A. Brooks and A. B. Brooks, and Maggie Rose with the murder of an unknown man (a description of whom is given) on the 30th of May, 1899, by mingling and causing to be mingled with beer certain poisons, to wit, laudanum, morphine, and opium, with intent to kill and murder said person; they well knowing that said human being would drink and swallow said poisoned beer, etc.

At January term, 1900, a severance was granted upon request of F. A. Brooks, and the other two agreeing thereto he was placed on trial alone, and a judgment of conviction had, which was reversed.   The case as to the two Brooks was set for trial on May 17th, and reset for May 24th, with special venire for each defendant.   The case as to A. B. Brooks has never been tried, and the indictment still pending charges him as a principal in identical offense charged against F. A.

Brooks. When the cases were called on May 24th, the defendants each moved the court to sever the cases and put A. B. Brooks first upon trial, he announcing ready for trial. F. A. Brooks also filed his sworn motion as recited in his second assignment of error. These motions were first filed on May 17th, and again filed on May 24th, and presented and urged after the State announced ready as to F. A. Brooks, but before he made any announcement. The court overruled each motion so far as same prayed that A. B. Brooks be first tried, and required A. F. Brooks to go first to trial, upon two grounds: (1) The motions were presented too late—after the State had announced ready; and (2), the order made at January term was res adjudicata as to order of trial.

The essential faces connected with this killing, as shown by the record, may be stated briefly as follows, viz: The deceased, an unknown man, some time after dark, was passing along one of the principal streets of Galveston. He called to a negro man across the street to come to him, and asked the negro if he could direct him to Thompson's boarding house. The negro told him he could, and, after some conversation, the parties started off, the negro promising to go with him to Thompson's. In going along the street towards Thompson's, they came to the saloon and dance hall of appellant, F. A. Brooks. Deceased asked the negro into the saloon to get a drink. They went in and deceased treated the negro and one of the white women attendants at the place to beer and appellant to a cigar. He then retired with one of the white women of the place to the "wine room," and while in there ordered many drinks and seemed to be treating any and everybody who asked him to treat. He had a ten-dollar bill changed by appellant and exhibited quite a sum of money. He became very much intoxicated; refused to go on to Thompson's with the negro. Visited one or more of the private rooms of the dance women. Tried to dance with them in the dance hall, and also tried to dance with A. B. Brooks, appellant's brother. During the time he was trying to dance with the latter, one of the witnesses testified she saw A. B. Brooks, who had his arms around deceased, take deceased's pocketbook from his pocket. Whenever deceased would order drinks, they were brought in from the bar by appellant. The last time deceased ordered drinks, he was brought a glass of beer which was very dark colored. Deceased perhaps tasted and then refused to drink it, whereupon A. B. Brooks insisted upon his drinking it, which he finally did. Soon thereafter he became very drowsy, and the two Brooks brothers took him and led him into the open space back of the saloon and laid him upon the top of a cistern. They were then seen searching his clothing, after which they took him out of the back gate into an alley where they left him; and when they let go of him he took two or three steps and fell upon the ground. Here he was found by a negro woman who hunted up a policeman and the latter sent him to the John Sealy Hospital. The physician then diagnosed the case as one of opium or lau-

danum poisoning, and treated him accordingly, but unsuccessfully, and he died there in the course of a few hours. Afterwards, the contents of his stomach was analyzed by Dr. Seth Morris, the professor of chemistry at the medical college, and he found laudanum or morphine in sufficient quantities to cause death.

*Marsene Johnson* and *Will G. Barber,* for appellant.—The privilege of defendants to demand a severance and elect as to order of trial is a matter of absolute right, no discretion being left with the trial court by the statute, which is mandatory. Willeys v. State, 22 Texas Crim. App., 413; Tieman v. State, 28 Texas Crim. App., 145; Forcey v. State, 29 Texas Crim. App., 408; Davis v. State, 26 S. W. Rep., 410; King v. State, 34 S. W. Rep., 282; Price v. State, 40 S. W. Rep., 596; Andy v. State, 87 Ala., 23; Trisler v. State, 39 Ind., 473; Greer v. State, 54 Miss., 378.

A motion to sever and place a particular defendant first upon trial is certainly in time if made before announcement by defendants or before selection of jury begins. Code Crim. Proc., arts. 706, 707; Dodson v. State, 24 S. W. Rep., 899; Babcock v. People, 15 Hun (N. Y.), 347; State v. McLane, 15 Nev., 345; Nichols v. Territory, 41 Pac. Rep., 108 (Okla.) ; Carr v. State, 19 Texas Crim. App., 635.

The doctrine of res judicata applies to final judgments upon the merits, and not to interlocutory orders or decrees entered upon motions involving no controverted issues of fact. This is especially true as to matters affecting simply the order or time of trial. 2 Black, Judg., secs. 509, 695; 1 Freem., Judg., secs. 251, 325, 326; 1 Van Fle., Former Adjud., sec. 27; Rockwell v. Dist. Court (Col.), 29 Pac. Rep., 454; 31 Am. St. Rep., 273; Johnston v. Brown (Cal.), 47 Pac. Rep., 686; Frazer v. Barry (Kan.), 45 Pac. Rep., 724; Allison v. Whittier (N. C.), 8 S. E. Rep., 338; Reilly v. Perkins (Ariz.), 56 Pac. Rep., 734; Schattsneider v. Johnson, 39 Wis., 387; Tieman v. State, 28 Texas Crim. App., 144.

When an indictment sets out the means by which an offense is committed, even if with unnecessary minuteness, same become descriptive averments, and must be proved as alleged. This applies to the allegation as to how the injury was inflicted in homicide or assault cases. Cowan v. State, 56 S. W. Rep., 751; Williams v. State, 8 Texas Crim. App., 367; Strange v. State, 26 S. W. Rep., 406; Helmerking v. Commonwealth, 37 S. W. Rep., 264 (Ky.) ; Guedel v. People, 43 Ill., 226; Herold v. State, 35 S. W. Rep., 670; John v. State, 24 Miss., 569.

The charge must be limited by the allegations of the indictment, and it is error to submit a case not made by the indictment.—[The charge complained of is set out in the opinion.—Reporter.] Section 800, White's Ann. Stat.; Whitcomb v. State, 30 Texas Crim. App., 370.

The verdict is wholly insufficient, in that it does not specify the degree or murder of which defendant was found guilty. In support of this proposition we cite the following authorities: Penal Code,

art. 712; Code Crim. Proc., art. 751; Slaughter v. State, 24 Texas, 354; Buster v. State, 42 Texas, 315; Colbath v. State, 2 Texas Crim. App., 390; Brown v. State, 3 Texas Crim. App., 315; Krebs v. State, 3 Texas Crim. App., 361; Nettles v. State, 5 Texas Crim. App., 386; Dubose v. State, 13 Texas Crim. App., 424; Wooldridge v. State, 13 Texas Crim. App., 459; Sanders v. State, 18 Texas Crim. App., 372; Armstead v. State, 22 Texas Crim. App., 30; Johnson v. State, 30 Texas Crim. App., 419; Martin v. State, 38 S. W. Rep., 194; Mc-Cloud v. State, 37 Texas Crim. Rep., 237, 39 S. W. Rep., 104; Harbolt v. State, 40 S. W. Rep., 983; La Tour v. State (Wis.), 67 N. W. Rep., 1138.

*Rob't A. John,* Assistant Attorney-General, for the State. [No brief found with the record.—Reporter.]

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

Upon the former trial severance was had at the request of the parties, there being three indicted, and appellant placd upon trial, and the case dismissed as to codefendant Maggie Rose. When the case was called for trial, resulting in this conviction, another motion was made for severance, supported by an affidavit to the effect that it was believed there was not sufficient testimony against codefendant A. B. Brooks to justify his conviction, and that his testimony was wanted, in case of his acquittal, for appellant on his trial. The severance was refused on the ground that, having severed at the previous trial, it was res adjudicata, and another severance could not be had; that is, by once exercising their statutory right of severance, they were thenceforth, in all subsequent trials, bound by that severance. We do not understand this to be a proper construction of the statute. The severance is granted for the trial. Upon subsequent trials the parties would have the right to change the order of trial, if in their judgment they thought it was to their interest. If the doctrine of res adjudicata would apply in this character of case, it would also in applications to change venue.

The court charged the jury: "If you believe from the evidence beyond a reasonable doubt that defendant F. A. Brooks, about the time and place stated in the indictment, and with a sedate and deliberate mind and formed design to kill the man mentioned in the indictment, did unlawfully give to said man, and cause him to swallow it, a poison mentioned in the indictment, mixed with beer, and that same was calculated and likely to produce death, and thereby kill deceased, then find defendant guilty of murder in the first degree, and assess his punishment at death or by confinement in the State penitentiary for life." This is objected to because it submits a different case than that set out in the indictment. The indictment

charged appellant with the murder of an unknown man, by mingling and causing to be mingled certain poison called "laudanum," and certain poison called "morphine," and certain poison called "opium" with a certain drink, to wit, beer, with intent then and there to injure and kill and murder the aforementioned unknown human being; he and his codefendants well knowing that said party would drink and swallow said poisoned beer, and then and there intended that he should drink said poisoned beer, etc. Appellant was indicted under articles 647 and 649 of the Penal Code. The charge given would have justified a conviction without reference to these articles or the allegations contained in the indictment. Under the charge given, it was not necessary to his conviction that appellant should have mingled the poison with the beer. It was only necessary that he should have given deceased the poisoned drink. Had appellant given the poisoned beer, and the party died from it, he would have been guilty of murder, though he had not mingled the poison with the beer, under this instruction.

The verdict of the jury is attacked for insufficiency, in that it fails to specify the degree of murder. The verdict is in the following language: "We, the jury, find the defendant F. A. Brooks guilty as charged in the indictment, and assess his penalty at confinement in the State penitentiary for life." Article 712, Penal Code, provides: "If the jury shall find any person guilty of murder, they shall also find by their verdict whether it is of the first or second degree." This article has invariably been held mandatory, though the statute makes murder by poisoning murder of the first degree. See, directly in point, Johnson v. State, 30 Texas Crim. App., 419, and, for collation of authorities, see White's Ann. Penal Code, sec. 1262.

Two other sections of the charge are criticised—one with reference to what acts are sufficient to constitute a conspiracy, and the second as to the acts and declarations of the codefendant A. B. Brooks. Without entering into a discussion of these matters, upon another trial the alleged errors can be avoided by a more careful wording of the charge. From the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*