## WM. LYLES v. THE STATE.

### No. 2954. Decided April 12, 1905.

#### 1.—Murder—Verdict Must State Degree.

Where a verdict in a case of murder fails to designate of what degree the jury find the defendant guilty, the judgment must be reversed.

#### 2.—Same—Evidence—Res Gestae.

The statement of a witness that he was about 200 yards from where he heard the shot fired which evidently killed deceased, and saw his team standing in the road, and deceased lying beside the road by the wagon; that witness got out of his wagon, some fifty or one hundred yards from defendant, when the latter threw a gun down on him, telling him to get back and that if he went there he would shoot him, was res gestæ and admissible in evidence.

#### 3.—Same—Harmless Error.

A statement of witness that he went home and changed his horses, and then procuring a physician brought him out to the deceased, while *inadmissible,* did not prejudice defendant's rights and was harmless error.

#### 4.—Same—Dying Declarations—Introductory Statement.

Where a preliminary statement to a written dying declaration to the effect that deceased believes he is going to die of the gun shot wound *inflicted on* him by a gun in the hands of defendant and that he makes this his dying statement, might not be admissible, yet where the proper predicate is laid that the declarant, at the time of making the declaration was conscious of approaching death, the introduction of the dying declaration would be authorized, and the admission of such preliminary statement would not in itself constitute reversible error.

#### 5.—Same—Non-Expert Opinion.

Non-expert opinion, as to whether the deceased, in a case of murder, was rational at the time of making dying declarations is admissible if based upon the proper means of knowledge.

#### 6.—Same—Eye-Witness—Dying Declarations.

Dying declarations are admissible in evidence, regardless of the testimony of eye-witnesses.

#### 7.—Same—Acts And Conduct of Third Parties.

The fact that a State's witness, when defendant approached him after the homicide, got scared and thought defendant was going to hurt him, and that witness jumped off his wagon, took the gun away from defendant and ran off with it, was not involved in the homicide and inadmissible.

#### 8.—Same—Cross-Examination—Res Gestae.

It was competent for the State on cross-examinatiton to prove by the witness that, during the difficulty in which the homicide was committed, the defendant shot at him; defendant having gone into part of the res gestæ, authorized the State to prove other facts connected therewith.

Appeal from the Criminal District Court of Harris. Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

Deceased's dying statement showed that while attempting to interfere between defendant and one Dupree whom defendant had shot at, the latter turned on the deceased and shot him. The defendant claimed that both he and the deceased were drunk at the time of the homicide; that he did not shoot at Dupree, but fired in the air, and that in a friendly scuffle between deceased and defendant over his gun, defendant fell and his gun accidentally went off and the shot hit deceased.

*Brackman & Kahn* and *E. T. Branch,* for appellant.—The verdict of the jury does not find the degree of murder. Brooks v. State, 60 S. W. Rep., 53; Wooldridge v. State, 13 Texas Crim. App., 443; 2nd Bishop's Criminal Procedure, section 595, and note. Article 712, Penal Code. Clark's Criminal Law, page 214, note "verdict." An indictment cannot be looked to in aid of a verdict in a murder case, to determine the degree. The verdict is a special verdict, and must be complete on its face.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was charged with murder, was convicted, and his punishment fixed at imprisonment in the penitentiary for a term of five years; hence this appeal. The verdict of the jury fails to find the degree of murder, and under the authorities the judgment must be reversed on this account. Brooks v. State, 60 S. W., 53; Wooldridge v. State, 13 Texas Crim. App., 443. However, there are some other questions presented which we will discuss briefly.

Appellant objected to the witness Karnes stating that he was about two hundred yards from where he heard the shot fired which evidently killed deceased. At that point he saw the team of deceased standing in the road. He also saw deceased lying beside the road by the wagon, and that he got out of the wagon, being then about one hundred yards from deceased and about fifty yards from defendant. Defendant threw a double-barrel shot-gun down on him and told him to get back, if he went there (meaning to where deceased was) he would shoot him. This was objected to on the ground that it was not part of the res gestæ. It occurs to us it was sufficiently connected with the offense to be admissible as a part of the res gestæ.

However, we do not believe that that portion of the testimony presented in appellant's bill of exceptions number 3 as to witness going home and changing his horse, and then procuring a physician and bringing him out to Mrs. Wright's, was admissible; still we fail to see any particular prejudice from this character of testimony.

Appellant has a bill of exceptions to a portion of the dying declara-

tion at the beginning to wit: "I, William Leben believing that I am going to die of the gun shot wound inflicted on me by a gun in the hand of William Lyles, make this my dying statement." This is shown to be not in the statement or dying declaration of appellant. However, the main fact to be proved in such case is, that the declarant was at the time of making the statement conscious of approaching death, and realized he had no chance of recovery. This fact sufficiently appears from the record, and the preliminary statement above copied would not constitute reversible error. Besides, we would observe that the dying declaration is not set out in any of the bills of exception, and the same may have contained expressions of similar import. At any rate, if on another trial the predicate is sufficiently laid, that is, the fact that the declarant at the time of making the statement was conscious of approaching death, then, while this preliminary statement of his might not be admissible, still the predicate otherwise laid would authorize the introduction of the testimony.

The bill of exceptions also questions the action of the court in permitting non-experts to testify that deceased was rational at the time of making the statement. We do not believe this is a question of expert testimony, but a matter about which any witness who was present at the time, might be authorized to testify: of course, subject to a cross-examination as to his means of knowledge.

Appellant insists. that dying declarations are only admissible on the ground of necessity, and where there are eye-witnesses to the transaction constituting the homicide the necessity no longer exists, and therefore dying declarations are not admissible as testimony. We cannot agree to this contention. Of course, dying declarations are admissible on the ground of necessity, but being admissible such declarations can be introduced in-evidence regardless of the eye-witnesses who may testify.

We do not believe it was admissible for the State to prove that William Karnes, when appellant approached him after the shooting, got scared and thought defendant was going to hurt him, and that he jumped off his wagon and took the gun away from defendant and run off with it. This was the act and conduct of a third party not involved in the homicide.

We believe it was competent for the State on cross-examination to prove by Dupree that, during the difficulty in which the homicide was committed, the defendant shot at him. The fact that defendant went into a part of the res gestæ of the homicide with the witness, would authorize the State to prove other facts connected therewith.

It occurs to us that the court's charge on murder in the second degree was authorized by the evidence, and was a proper charge.

Other charges of the court are questioned, but our attention has not been called to any particular error, and we do not deem it necessary to discuss the same, nor to discuss the refused special charges. As heretofore stated, this case must be reversed because of the failure of the jury to find the degree of murder. The general verdict finding appellant

guilty as charged and assessing his punishment at five years in the penitentiary not being sufficient.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*