AGNES ORNER v. THE STATE.

No. 1453. Decided January 31, 1912.

**1.—Murder—Verdict—Statutes Construed—Degree.**

Under article 1142, Revised Criminal Statutes, a jury must find whether defendant is guilty of murder in the first or the second degree, and where the verdict does not specify the degree under an indictment charging murder by poison, there was reversible error. Following Buster v. State, 42 Texas, 315, and other cases.

**2.—Practice in District Court.**

See opinion for admonition to trial courts to comply with the plain language of the statutes in order to avoid reversal.

**3.—Same—Evidence—Character of Defendant.**

Where defendant's character was not placed in issue, it was reversible error, upon trial of murder, to admit testimony that on the night before the death of the deceased, defendant was drunk.

**4.—Same—Evidence—Res Gestae—Declarations of Deceased.**

Where, upon trial of murder by poison, the State was permitted over the objections of the defendant to show that some time in the evening on the day of her death deceased said, "I would be all right if mama had not given me that in the coffee;" there was reversible error, it simply being the opinion of the declarer made several hours after the supposed administration of the poison, in the absence of the defendant, and after various things had intervened. This was neither res gestae nor dying declarations.

**5.—Same—Evidence—Acts of Third Parties.**

Upon trial of murder by poison, it was reversible error to admit testimony that the last time the deceased (being a child) was at witness' house, she was playing with the children and began to cry; no connection with the defendant and this incident being shown.

**6.—Same—Evidence—Grand Juror.**

Upon trial of murder by poison, it was error to permit the foreman of the grand jury which returned the indictment, to testify that he heard the evidence read before the grand jury, and that he was unable to ascertain any manner in which the poison was administered, etc., the case being one of circumstantial evidence.

**7.—Same—Evidence—Search—Hearsay.**

Upon the trial of murder by poison, it was error to admit testimony that on the afternoon of the funeral, while defendant was in jail, her room, bedding, clothes and other places in the house were searched in the absence of the defendant, and that no bloody towels were found, leaving the inference that defendant had made away with them; there being no evidence that defendant was instrumental in hiding the towels.

**8.—Same—Charge of Court—Declarations of Deceased.**

Where the declarations of the deceased were improperly admitted, the court should have submitted a requested charge withdrawing them from the consideration of the jury.

**9.—Same—Charge of Court—Exculpatory Facts.**

Where, upon trial of murder by poison, there was evidence tending to show that deceased had ample opportunity to receive the alleged poison from a variety of sources other than defendant, the court should have submitted a charge on this phase of the case.

**10.—Same—Charge of Court—Burden of Proof.**

Where, upon trial of murder by poison, the evidence was entirely circumstantial, the court should have submitted a charge that the burden of proof is on the State.

Appeal from the District Court of El Paso. Tried below before the Hon. James R. Harper.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*R. L. Nichols* and *Chas. Owen,* for appellant.—On question of verdict: Cases cited in opinion.

On question of statement of deceased in absence of defendant: Reeves v. State, 7 Texas Crim. App., 276; Boyd v. State, 36 Sou. Rep., 525; Field v. State, 57 Miss., 474; Navarro v. State, 24 Texas Crim. App., 378; Poyner v. State, 51 S. W. Rep., 376.

On the question of admitting testimony that defendant was drunk, etc.: Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; State v. Gainor, 84 Iowa, 209.

*C. E. Lane,* Assistant Attorney-General, and *Joseph M. Nealon,* District Attorney, for the State.—On the question of the sufficiency of the verdict: In the case at bar the language charged murder by poison, and the jury finding the defendant guilty of murder as charged in the indictment, and the statute providing that murder by poison is always murder in the first degree, the verdict is sufficient: Slauter v. State, 24 Texas, 410; Holland v. State, 38 id., 475; Iowa v. Wiese, 4 N. W. Rep., 827; Kennedy v. State, 6 Ind., 485; Territory v. Romine, 2 N. M., 114; Bulloch v. State, 10 Ga., 46; State v. Hooker, 17 Vt., 658; Huson v. Dale, 19 Mich., 17.

On the question of res gestae: Tooney v. State, 8 Texas Crim. App., 452; Lewis v. State, 29 id., 201; Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W. Rep., 299.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, her punishment being assessed at life imprisonment.

The indictment contains six counts, charging murder by poison. These counts are placed in the indictment to meet any possible phase of testimony that might be developed upon the trial. The case is one of circumstantial evidence. A brief summary of the facts will be stated later in the opinion.

1. The verdict of the jury is in the following language: "We, the jury in the above entitled cause No. 5516, find the defendant guilty, as charged in the indictment and assess her punishment to penitentiary for life, this May 27th, 1911. E. L. De Shazo, Foreman." This verdict was assailed in the trial court as being not in compliance with the law in that it did not specify the degree of murder of which appellant was convicted. This should have been sustained. Article 712, of the Revised Statutes of 1895, article 1142 of the Revised Criminal Statutes, reads as follows: "If the jury shall find any person guilty of murder they shall also find by their verdict whether it is of the first or the second degree, and if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he. is guilty and in either case they shall also find the punishment." The cases have reviewed and construed this statute throughout the history of the Supreme Court and of this court, and have held that the verdict of conviction under this statute must specify the degree of murder of which the jury finds the party guilty. Buster v. State, 42 Texas, 315; Johnson v. State, 30 Texas Crim. App., 419; Blocker v. State, 27 Texas Crim. App., 16; Giles v. State, 23 Texas Crim. App., 281; Brooks v. State, 42 Texas Crim. Rep., 347; Zwicker v. State, 27 Texas Crim. App., 539; Colbath v. State, 2 Texas Crim. App., 391; Taylor v. State, 3 Texas Crim. App., 169; Krebs v. State, 3 Texas Crim. App., 348; McCloud v. State, 37 Texas Crim. Rep., 237; Armstead v. State, 22 Texas Crim. App., 51; Wooldridge v. State, 13 Texas Crim. App., 443; Harbolt v. State, 40 S. W. Rep., 983; Collath v. State, 2 Texas Crim. App., 391; Sanders v. State, 18 Texas Crim. App., 372; Dubose v: State, 13 Texas Crim. App., 418; Brown v. State, 3 Texas Crim. App., 294; Lyles v. State, 48 Texas Crim. Rep., 119; Thomas v. State, 43 Texas Crim. Rep., 20, 138 S. W. Rep., 1019.

It is unnecessary to cite further authorities to show the ruling of the trial court was erroneous. Why cases should be permitted to come to this court with the verdict in the condition this is in view of the plain provisions of the statute and long line of decisions, is not readily comprehended. The district attorney has filed a brief in which he insists upon this court ignoring the statute and overruling the cases. This court is not authorized to vacate statutes or set them aside. The Legislature has provided that the jury shall specify the degree of murder of which the accused is convicted. This they had authority to do,

· and this court has no authority to set it aside. There is no constitutional question involved in the construction of this statute, and no attack is made upon the statute that it is unconstitutional. It would be better in the administration of criminal law if matters of this sort were looked after in the trial courts instead of asking this court on appeal to set aside or disregard legislative enactments, unless the · contention be the statute is violative of some provisions of the Constitution. We would suppose that the district attorney by his brief is of the impression that this is a technicality. It may have been unwise for the Legislature to provide as they did provide in the statute quoted, but with that we have no concern. Instead of disregarding the statutes in the trial courts they should closely adhere to them in the enforcement of criminal law. This appeal was unnecessary, and with a little care and caution this verdict could have been avoided as it is written. This verdict was read in the presence of the court when returned into court by the jury and this defect was then discoverable, and had the jury been sent out to correct this verdict in accordance with the statute, this question would·not have been suggested to this court for revision.

2. The witness Lee, main State witness, over objection of appellant, was permitted to testify that on the night before the death of Lillie Orner, defendant was at the Toltec saloon drinking with Mrs. Evans. That he assisted her home, and that she was drunk. Various objections are urged to this testimony. This was inadmissible. It was not an issue in the case as to whether she was drunk or not. Her character was not placed in issue, and this was in no way connected with this transaction. Mrs. Evans was permitted to testify over appellant's objection that sometime in the evening after one o'clock of the· day on which Lillie Orner died, deceased said to her, "I would be all right if mamma had not given me that in the coffee." The objection was that the testimony was too remote in point of time to be a part of the res gestae and was not shown to be a dying declaration of deceased, defendant was not present when said statement was made, and that it in no way connects the defendant with the commission of the alleged crime, and is immaterial and irrelevant to any issue in the case. We are of opinion this objection should have been sustained. It was in part the opinion of the declarant made some hours after the supposed administration of the poison, if any was administered, in the absence of defendant, and after various things had occurred, and was not the acts speaking through the witness, but the witness giving her conclusion and statement of why she was sick. While the bill is a little indefinite, it is discussed in view of another trial. The facts will show in this connection that the State's theory was that arsenic was administered through coffee given the child at the dinner hour about 12 or 12:30 o'clock. It is shown that after dinner the child went out in the street and played a while and came back complaining of being sick at the stomach. It is shown that at 2 o'clock she was sitting in the

window apparently well. This was through the witness Deloach. That subsequently after about 4 o'clock Mrs. Evans was at the residence of appellant to do some sewing and was talking to the child, and during the conversation this remark was made. All continuity between the act and the statement of the child was broken by many incidents and occurrences. It was but the opinion of the child, and this without stating what it was, if anything was placed in the coffee. Under the peculiar facts we are of opinion this could not be treated as res gestae, and was clearly not a dying declaration. There was nothing to show or attempted to be shown that the child believed she was going to die. The same may be said in regard to another bill in regard to the same subject matter.

3. Another bill recites that while one Garcia was testifying for the State, over appellant's objection, he was permitted to testify that the last time the deceased, Lillie Orner, was at his house she was playing with the children and began to cry. Numerous objections were urged to the introduction of this evidence. This was inadmissible. It had not been undertaken to connect defendant with the crying. It was a matter between third parties; defendant was not present; it occurred at one Garcia's house while the child was playing with his children where she had taken supper. The bill is rather indefinite, but we mention this in view of another trial.

4. Another bill of exceptions recites that Happer was permitted to testify that he was foreman of the grand jury which returned the indictment in this case, and that he heard the evidence read before the grand jury, and that he was unable to ascertain any manner in which the poison was administered, and that there was no evidence before the grand jury as to the manner in which the poison was administered to the deceased, Lillie Orner. Objections were urged to this. This is not brought within any rule that has been decided by this court of which we are aware. This character of testimony is sometimes admissible when the grand jury has failed to properly charge the name of the injured party or matters of that sort, or where the party is known as well by one name as another, or where the grand jury had used diligence or had not used diligence to ascertain the facts in order to properly allege a case in the indictment. Nothing of that sort arose in this case, and this testimony was therefore inadmissible.

5. The State witnesses White and Stansel were permitted to testify that from about four to six o'clock on the afternoon of the funeral and after the arrest of appellant, and when she was in jail, they searched the room, bedding, clothes and other places in the house and saw no bloody towels. Various objections were urged to this. The poisoning, if it occurred, was on Saturday. Sunday an autopsy was made and the contents of the stomach analyzed. On Monday the funeral occurred. At the time these officers investigated the house the defendant was in jail. This was used we suppose as a criminative fact, conveying the idea or seeking to convey to the jury that the

defendant had made away with the towels which the witnesses show were bloody. Several witnesses testify to the fact that on Saturday evening, among others, the doctor and Mrs. Evans, perhaps another witness, they were there and saw the bloody towels; that they were there and the doctor looked at them and the other witnesses also saw them. The fact that they may have disappeared or been washed or taken away while the defendant was in jail, could not be used as a circumstance against her unless she could be connected in some way with their disappearance. These towels, as shown by defendant in her testimony, and by the other witnesses, were used in absorbing the blood that was vomited by the child during her sickness. This was not proper, and should not have been permitted to go to the jury under the circumstances of this case. There was no attempt on the part of appellant while she was at the house, as shown by the testimony of the witnesses, to secret anything, and she could not be held responsible for what occurred while she was in jail, and in order to connect her with it, it should have been shown that she was instrumental in some way in hiding the towels, if they were in fact hid.

6. The defendant not only objected to the statement of the child to Mrs. Evans as heretofore discussed, but sought to eliminate it again by an instruction to the jury to the effect that they could not consider such statement against the defendant. This was declined. We are of opinion that this charge should have been given inasmuch as the testimony had been permitted to go to the jury.

7. Exception was reserved to the charge of the court because it failed to instruct the jury on all the law applicable to the case, and because it did not embrace every phase made by the evidence in this, that there was, evidence in favor of defendant tending to show that deceased had ample opportunity to receive and may have received poison from a variety of sources, and it was the theory of the defendant that there was evidence tending to show the possibility or probability of the poison having been received accidentally from food which contained arsenic poison, and from other sources and by other means, and said evidence was pertinent and forcible that it might be reasonable to suppose that the jury might be influenced by it in arriving at their verdict, and the court should have so charged as to furnish them an appropriate rule of law on this phase of the testimony. We are of opinion that such a charge should have been given. The doctors testify that arsenic is found in cheap candy and in canned goods, and various other things that are in common use, and among other things, it is shown the little girl had candy just before she was taken sick, and that she had been sick more or less for sometime, which was evidenced by vomiting and complaints of her stomach, and that she had been kept at home and from school on account of it. Every phase of the law which is beneficial to an accused on his trial before a jury should be appropriately charged and the attention of the jury called to it so that they may pass upon the different phases of the evidence,

The testimony, without going into details and setting it out, requires upon another trial that the court will so charge the jury as to remedy the defects pointed out in appellant's exceptions in failing to charge with reference to testimony that was before the jury that the poison may have come from other sources than from the appellant.

8. Appellant requested an instruction submitting the provisions of the statute which provides that the burden of proof is on the State to show the guilt of the accused, and it does not devolve upon the defendant to show her innocence. This was refused by the court. Under the circumstances of this case we believe this charge ought to have been given.

For the errors discussed the judgment is reversed and the cause is remanded.

*Reversed and remanded.*