## OCEOLA ROBERTS v. THE STATE.

*No. 284. Decided January 27.*

1. **Verdict—Sufficiency of—Bad Spelling—Surplusage.**—On a trial for theft from the person, where the verdict was, "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment *at conprisonment* in the State penitentiary for the term of two years," *Held*, the verdict was good and sufficient without the words "at conprisonment," which could be rejected as surplusage without affecting its completeness.

2. **Same.**—Where the sense of a verdict is clear, it is to be reasonably construed, and neither incorrect orthography nor ungrammatical language will render it illegal or void.

3. **Theft from the Person—Recent Possession—Reasonable Explanation.**—
On a trial for theft from the person, the same rules as to explanation of recent posses-
sion apply as obtain in other theft cases.

4. **Same—Theft of Property Under Twenty Dollars.**—Where the indictment
charges theft from the person only, the accused can not be convicted of theft of prop-
erty under $20 in value.

APPEAL from the District Court of Milam.   Tried below before
Hon. JOHN N. HENDERSON.·

Appellant was indicted for fraudulently and privately taking a
watch of the value of $10 from the person and possession of one D. K.
Donovan.   At his trial he was convicted, punishment being assessed
at a term of two years in the penitentiary.   The verdict of the jury was·
as follows:   "We, the jury, find the defendant guilty as charged in
the indictment, and assess his punishment at conprisonment in the State
penitentiary for the term of two years.—J. D. PEOPLES, Foreman."

In substance, the evidence shows that Donovan was in the town of
Cameron on the 15th of July, 1893.   That late in the afternoon he put
his money (two ten and one five dollar bills) in his left-hand vest
pocket, and then put his watch into the same pocket; his spending
money (a few silver dollars) in his right-hand breeches pocket.   He
was drinking when he did this.   About dark he met the defendant for
the second time during the day—defendant being a one-eyed boy, and a
stranger to him—at Kubecka's saloon, about a half-mile from the public
square.   He treated the crowd and drank more himself, and was quite
drunk.   He told defendant that if he would look after him he would
give him some money.   Sometime after he started to the depot to take
the train, but finding it already gone, he went off some four or five
hundred yards into the woods and laid down and went to sleep.   When
he woke up, next morning early, he found the one-eyed young man
gone and also his watch and money—the paper money.   On the
ground where he had slept he found two or three silver dollars, which
he supposed must have dropped out of his pocket.   His watch was
worth about ten or twelve dollars.

Defendant is shown to have had no money at 4 o'clock in the evening;
was begging something to eat at a restaurant.   At 10 or 11 o'clock the
same evening he had a five-dollar bill, and said he "had made a raise"
through a friend he met at the depot in a box car, who had divided
with him.

The sheriff arrested defendant the next day about six miles in the
country, where his brother lived.   He searched defendant and found
two or three silver dollars in his pocket and also the stolen watch.   He
warned defendant as to any statement he might make, and defendant
told him first that he had gotten the watch from one Sid Hause, and
afterwards told him he had gotten it from a man in Dallas for whom
he had worked.

The court charged the law with regard to explanation of possession of property recently stolen.

Defendant's counsel requested a charge, in effect, that if the property was taken under circumstances such as to constitute theft, but was not taken from the person, that then the jury might convict the defendant of the theft of property under $20 in value and assess his punishment for such misdemeanor theft; which instruction the court refused to give, and defendant saved his bill of exceptions.

*Henderson & Streetman*, for appellant, filed an able and interesting brief.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—This conviction was for theft from the person, and the punishment assessed at two years' confinement in the penitentiary. The sufficiency of the verdict is called in question. As found in the record, the verdict reads as follows: "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment at conprisonment in the State penitentiary for the term of two years." The original verdict is found in the record, but, if identified so that we could consider it, we find the very word "confinement" or "conprisonment" too badly torn to be able to form any conclusion as to how it was written by the jury as corrected by the court. We shall consider the verdict as found copied in the judgment above quoted, in the determination of the case. "It is well settled," as was said in Birdwell's case, "where the sense is clear, that neither incorrect orthography nor ungrammatical language will render a verdict illegal or void, and that it is to be reasonably construed, and in such manner as to give it the meaning intended to be conveyed by the jury." Birdwell v. The State, 20 So. W. Rep., 556; Stepp v. The State, 31 Texas Crim. Rep., 349. If the word "confinement" was written "conprisonment," and such spelling constitutes no word in the English language, still the verdict is perfectly intelligible. "At conprisonment" may be rejected from such verdict without affecting it in the least. It would still be complete, and "assess his punishment in the State penitentiary for the term of two years." When viewed in the light of the indictment and the charge of the court, it is too plain for discussion that the intention of the jury was to, and they did, convict defendant of theft from the person. We can not assent to set aside verdicts for such supposed errors as this.

It is insisted that the charge in regard to the defendant's explanation of the stolen property, while sufficient if applied in ordinary theft cases, is incorrect and fundamentally wrong when applied to the case in hand. We are unable to appreciate this distinction. While

the different phases of theft are constituted by different facts, yet if the possession of the supposed stolen property is reasonably accounted for in either case, and the property is obtained otherwise than fraudulently, the State must fail. An honest possession of the property would apply as well to defeat one charge as the other, or a possession not fraudulently obtained from the owner would operate in either case to defeat the State. The office or effect of the "reasonable explanation" of the possession of recently stolen property is to rebut the idea of fraud, and this would evidently apply as well to theft from the person as to ordinary theft. The court did not err in omitting a charge upon the law in regard to misdemeanor theft. Under an indictment charging theft from the person, an accused party can not be convicted of theft of property under $20 in value. Harris v. The State, 17 Texas Crim. App., 132; Gage v. The State, 22 Texas Crim. App., 123; Green v. The State, 28 Texas Crim. App., 493.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.