Grover Essery v. The State.

No. 2836.   Decided December 17, 1913.

Rehearing denied January 14, 1914.

**1.—Murder—Verdict—Discharge of Jury.**

Where the court had accepted the verdict and discharged the jury, he had no authority or power to reconvene this jury two days later and permit them to amend their verdict; however, the verdict was sufficient as originally rendered.

**2.—Same—Degrees of Murder—Verdict—Statutes Construed—Case Stated.**

Where, upon trial of murder, under the old law defining degrees of murder, the indictment being in the usual form that defendant with malice aforethought did the killing, and the evidence did not raise the issue of any lower degree than murder in the first degree, which alone was submitted in the court's charge, and the jury returned a verdict finding the defendant guilty as charged in the indictment and assessed his punishment at imprisonment for life, the same was sufficiently certain upon which to base a judgment of conviction of murder in the first degree. Davidson, Judge, dissenting.

**3.—Same—Rule Stated—Degrees of Murder—Verdict—Charge of Court.**

While under the old law, when murder was divided into two degrees and both degrees were submitted to the jury, it was a valuable right for the defendant to have them determine of what degree of murder he had been adjudged guilty, yet where, under the law, the court submitted to the jury only murder in the first degree and they were not and could not be authorized to return a verdict of guilty of murder of any other degree than murder in the first degree, a verdict which found the defendant guilty as charged in the indictment and assessed his punishment at imprisonment for life is sustained. Davidson, Judge, dissenting.

**4.—Same—Practice in District Court—Harmless Error.**

While perhaps it was erroneous for the court to accept a verdict which did not specifically find that defendant was guilty of murder in the first degree, yet, when the verdict is taken in connection with the indictment and the charge of the court, and the only conclusion is that the verdict found him guilty of murder in the first degree, which was the only issue submitted, it was not reversible error. Davidson, Judge, dissenting.

**5.—Same—Rule Stated—Statutes Construed.**

When murder was divided into two degrees it was intended that when the two degrees were submitted to the jury, they should be required to find of what degree defendant had been adjudged guilty; but the Code providing that murder committed in a certain way is murder in the first degree, the law so makes it and the jury by their verdict can not find otherwise.

**6.—Same—Not Reversible Error—Case Stated—Presumption.**

Where no error was committed in the trial of the case, as is shown by the record, and the only matter complained of is that the verdict in express language did not state of what degree of murder the defendant was found guilty, and the charge of the court only submitted murder in the first degree, it must be presumed that the facts showed that if defendant was guilty of any offense, it was murder in the first degree, and the charge of the court, the verdict and the indictment must be looked to in passing upon this question, and there is no reversible error. Davidson, Judge, dissenting.

**7.—Same—Express Malice—Murder in the First Degree.**

Under article 1141, former Penal Code, all murder committed with express malice is murder in the first degree, and all murder not of the first degree is murder of the second degree, and under all our decisions murder with implied malice is murder in the second degree, and can not be murder in the first degree, and where the indictment charged express malice and was sustained by the evidence, and murder in the first degree alone was submitted to the jury, who found defendant guilty as charged in the indictment and assessed his punishment at imprisonment for life, the verdict must be sustained as one finding defendant guilty of murder in the first degree; and the whole record must be looked to in construing this verdict. Davidson, Judge, dissenting.

**8.—Same—Allegations by Inclusion—Indictment.**

Where the indictment, under all the forms and under the statute and decisions of this State, on its face expressly charged murder in the first degree

and nothing else, all lower degrees of homicide are only charged by inclusion, and not otherwise, and where defendant was found guilty as charged under a charge of the court submitting murder in the first degree alone, and the evidence did not raise any other degree, such verdict is sustained. Davidson, Judge, dissenting.

### 9.—Same—Statutes Construed—Degrees of Murder.

Article 1142, Penal Code, must be construed in the light of other articles in the Penal Code and the Code of Criminal Procedure, and so construing the same, a verdict in a murder case, which finds defendant guilty as charged in the indictment and assesses his punishment for life is not void because it does not expressly find in so many words of what degree of murder he is guilty, as it is absolutely certain that thereby a verdict for murder in the first degree was intended under the record of this case. Distinguishing Slaughter v. State, 24 Texas, 410; Buster v. State, 42 Texas, 315. Davidson, Judge, dissenting.

### 10.—Same—Charge of Court—Verdict—Rule Stated.

The verdict of the jury must be considered in connection with the charge of the court even more so than in connection with the indictment itself. Following Marshall v. State, 4 Texas Crim. App., 549; Styles v. State, 37 Texas Crim. Rep., 599, and other cases. Distinguishing Burton v. State, 62 Texas Crim. Rep., 648; McCloud v. State, 37 Texas Crim. Rep., 237, and other cases.

### 11.—Same—Cases in Point—Rule Stated.

The case of McGee v. State, 39 Texas Crim. Rep., 190, even goes further than the rule laid down in this case with reference to degrees of offenses and fully sustains the opinion in this case. Following Holland v. State, 38 Texas, 474.

### 12.—Same—Practice in District Court—Degrees of Murder.

In all murder trials under the old statute, the trial court should see to it that the verdict read guilty of murder in the first degree or in the second degree, as the case may be. Not only because the statutes say so, but to avoid just such a question as arises and is urged in this case.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Will S. Payne,* for appellant.—Cited cases in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—The indictment in this case charges that appellant did, with malice aforethought, kill L. T. Ammann.

No statement of facts accompanies this record, and there is no question that can, or should, be reviewed in the absence of a statement of facts, except the one in which appellant complains of the action of the court in sustaining the verdict as rendered and in permitting the jury to amend their verdict. This presents a serious question and one to which we have given much thought since occupying this high position. No one, under any circumstances, should be deprived of any right given him by the laws of this State, and if any provision of our Code of Crim-

inal Procedure has been overlooked or disregarded, if, in the remotest degree, it could have been hurtful or harmful to the person on trial, the verdict should be set aside. He has a right to be tried in accordance with the rules and forms of law, and if this sort of a trial is not accorded him, he has a right to complain, and to this complaint we will always give an attentive ear. In one ground of the motion we find the following complaint:

"The court erred in permitting the jury, after they had been discharged by the court on Thursday evening at 7:45 o'clock, and after they had rendered a verdict in the case, to again have them resummoned to reform their verdict; that said summons and said reformation of said verdict was on Saturday the 21st of June, 1913, after they had mixed and mingled with the outside world they were again resummoned and came into open court and reformed their verdict; that said verdict as it was originally rendered was void in that they failed to state what they found the defendant guilty of, in that they omitted the words 'murder in the first degree'; that by reason of said words being omitted in the verdict as it was originally rendered, rendered said verdict void for the reason that they had been discharged by the court, and for the further reason that they were not permitted to talk with any one before the rendition of the original verdict, and after the returning of same into open court, and after their discharge by the court, and their mixing and mingling with the outer world, and some of them having discussed the case; that said reformation of said verdict is void and was error on the part of the court, and was error on the part of the district attorney in requesting said reformation in said verdict to be made."

Of course, after the court had accepted the verdict and discharged the jury on the 19th it had no authority or power to reconvene this jury two days later, and permit them to amend their verdict. This was erroneous, and the amendment of the verdict gave no force nor validity thereto, other than the verdict was originally entitled to as first rendered and accepted by the court. This is true both in civil and criminal cases (Cookville Coal & Lumber Co. v. Evans, 135 S. W. Rep., 750). So the verdict, if sustained, must be held sufficient as originally rendered. It then read: "We, the judy, find the defendant guilty as charged in the indictment and assess his punishment at imprisonment for life." Article 1141, Penal Code, describes murder in the first and second degrees; and article 1142 requires that the jury shall state in their verdict whether they find the person on trial guilty of murder in the first or the second degree. We have cases that hold it was error for the jury to fail to so find, even though the facts only authorized a charge on murder in the first degree. (See Johnson v. State, 30 Texas Crim. App., 419, and Brooks v. State, 42 Texas Crim. Rep., 347.) But neither of these cases are reversed solely on that ground. In the case of Johnson, supra, the court committed an error in his charge, and in the Brooks case, supra, the charge was also held to be erroneous. In many cases, which

will be found collated in section 842 of Branch's Crim. Law, it will be seen that this court has held a verdict erroneous which fails to state the degree of murder of which the person on trial has been adjudged guilty. But in none of them has the case been reversed because of this error alone. When murder was divided into degrees, it was proper, where more than one degree of murder was submitted to the jury, to require the jury to state of which degree they found the person on trial guilty, for if a new trial was granted it was material to a defendant to know of which grade of homicide he had been found guilty, for if only of murder in the second degree, the death penalty could not be inflicted on the second trial. Therefore, when murder was divided into two degrees, and both degrees were submitted to the jury, it was a valuable right for the defendant to have determined of what degree of murder he had been adjudged guilty. However, in this case the court submitted to the jury only murder in the first degree and they were not and could not be authorized to return a verdict of guilty of murder of any other degree than murder in the first degree.

Had the court submitted both murder in the first and second degrees, there would be merit in appellant's contention, but as the court submitted only murder in the first degree to the jury, their verdict could not be interpreted nor understood as finding appellant guilty of any other degree than that submitted to them, and while perhaps it was erroneous to have accepted the verdict which did not specifically find that appellant was guilty of murder in the first degree and so state, yet, when we take the indictment, the charge of the court and the verdict as first returned, it is not only a necessary, but the only conclusion that could be arrived at—the jury did find appellant guilty of murder in the first degree. This was the only issue submitted to them, and while the verdict may be said to be erroneous, it is not such error as calls or will necessitate a reversal of the case. Any other construction of article 1142 of the Penal Code would be a strained construction, and never intended by the Legislature. After dividing murder in two degrees, it was intended that when the two degrees were submitted to the jury, then the jury should be required to find of what degree he had been adjudged guilty. But when the Code said that murder committed in a certain way was murder of the first degree, the law so makes it, and a jury by their verdict could not find otherwise.

We have often heard discussed technicalities of the law. The writer is of the opinion that while some of the language used in some of the opinions may be said to be technical; yet, there are really no technicalities in the law. A matter is either erroneous or not, and if erroneous, and it could have resulted in hurt or harm to the person on trial, the case should be reversed. But even though the matter complained of may be said to be erroneous, yet, if by no construction the error, if error there be, could have resulted in hurt or harm, then it is wrong to reverse the case. In this case no error was committed in the trial of the case as shown by this record; neither was there error in the charge of the

court, and the only matter complained of is that the verdict in plain language did not state of what degree of murder the appellant was found guilty, when only one degree of murder was submitted to them for their consideration, and under this record we must presume that the facts showed if appellant was guilty of any offense, it was by the Code declared to be murder in the first degree. Under such circumstances it seems to us the height of absurdity to say we can not determine by the indictment, the charge and the verdict of what degree of murder appellant was found guilty, and although we may be said to have some cases that incline to that view of the law, yet we can not get our assent to follow such technical construction of the law. We do not think the articles of the Code referred to call for or will bear such construction, but when the law says murder committed under given circumstances is murder in the first degree, and the court instructs the jury that if it was not committed in that way by the appellant to acquit, then to say that the verdict of guilty could be other than for murder in the first degree, seems to us an absurdity.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 14, 1914.—Reporter.]

DAVIDSON, JUDGE (dissenting).—The indictment in ordinary form charges appellant with murder. Murder is an offense consisting of degrees by statutory enactment. It embraces murder in the first and second degree, manslaughter, and negligent homicide, and may include other inferior offenses. This conviction occurred before the first of July, and was necessarily tried under the law before the change in the definition of murder went into effect, which occurred on July 1st. On June 19th the jury returned the following verdict: "We, the jury, find the defendant guilty as charged in the indictment and assess his punishment at imprisonment for life." On the 21st of June the jury was resummoned, resworn and under instructions of the judge made the verdict read so as to find appellant guilty of murder in the first degree. Exception was duly reserved and perpetuated in a bill of exceptions. Judge Harper, in the majority opinion, holds that this could not be done. In this he is correct both as to civil and criminal cases. I do not purpose to go into that phase of the case, because when the court receives a verdict and discharges a jury, that terminates that phase of the trial. The verdict could not thereafter be amended or changed but such as was returned by the jury would form the basis of the judgment. The court could not itself, nor could this court, in any manner change that verdict. The Constitution as well as the statutes provide that the jury alone can return a verdict on the facts. See Constitution, article 1, section 10; article 5, section 13; Harris' Ann. Const., pages 433 et seq., for collation of authorities.

Article 763 of the Revised Code of Criminal Procedure thus reads: "A 'verdict' is a declaration by a jury of their decision of the issues sub-

mitted to them in the case, and it must be in writing and concurred in by each member of the jury."

Article 764 provides that "Not less than twelve jurors can render and return a verdict in a felony case, and the verdict shall be signed by the foreman."

Article 770 provides: "The verdict in every criminal action must be general; when there are special pleas upon which the jury are to find, they must say in their verdict that the matters alleged in such pleas are true or untrue; where the plea is not guilty, they must find that the defendant is either 'guilty' or 'not guilty'; and, in addition thereto, they shall assess the punishment in all cases where the same is not absolutely fixed by law to some particular penalty."

Article 771 provides: "Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment or information."

Article 574 provides: "All issues of fact presented by a special plea shall be tried by a jury."

Article 1142 of the Penal Code reads as follows: "If the jury shall find any person guilty of murder, they shall also find by their verdict whether it is of the first or second degree; and, if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty, and in either case they shall also find the punishment."

It has been the rule, following the statutes, that a general verdict is sufficient except where the offense consists of degrees, but where there are degrees, the jury must specify the degree of which the accused is convicted. The verdict may be sufficient, however, if the jury itself should specify the degree of which they convict, without further specifying that they acquit of the higher. That the verdict rendered in this case is a nullity is so by reason of the statutes. Our courts, Supreme and Court of Criminal Appeals, have always held unless it be in the Holland case, 38 Texas, that such a verdict is insufficient, and to be absolutely a nullity. The reasoning on this line can not be better stated than was by Judge Roberts in Slaughter v. State, 24 Texas, 410:

"It is very probable, that the parties and the court understood what the jury meant by this verdict, and that they designed to find the defendant guilty of manslaughter only. This is evidenced by the absence of any effort to correct it, and by the recital in the judgment, that the jury had found 'defendant guilty of manslaughter.' This recital might raise the presumption, that the verdict had been corrected, but for the fact, that its informality was made a special ground, in the motions for new trial and in arrest of judgment, which were passed upon immediately preceding the rendition of the judgment; and their decision is recited in it.

"This conclusion that the jury intended to find the defendant guilty of manslaughter is arrived at, not from the verdict considered abstractly,

but from the facts in proof, and the charge of the court. If this be true, the verdict was such as that judgment could not be rendered upon it. This presents the two questions to be examined: First. Is the verdict sufficient, by itself, to warrant the conclusion that the jury intended to find the defendant guilty of manslaughter? And, second, if not, can the defect be aided, and the matter made certain, by reference to the facts in proof, and the charge of the court? This being an indictment, in common form, for murder, embraced within it charges of every degree of culpable homicide, towit, murder, manslaughter, and negligent homicide, of the first and second degree (O. & W. Dig., 530, 531, 532, 534), the defendant might have been found guilty of any one of these degrees, under this indictment, upon the plea of 'not guilty.' Such plea would put in issue each one, as well as all, these degrees of culpable homicide. A general verdict of 'not guilty,' negatives all of them. A general verdict of 'guilty,' would leave it uncertain as to the degree found by the jury; hence, our Code, in accordance with the practice at common law, requires the jury, if they find the defendant guilty of any of the inferior degrees, to indicate it in their verdict. (Article 630.) A general verdict of guilty, on such an indictment, under such a rule, would be a finding of the defendant guilty of murder, the highest degree charged. The term *verdict,* in its original signification, and according to its import, as used in judicial trials, denotes a true declaration by the jury. A true declaration of what? Not of the punishment (for originally that was not the province of the jury), but of the issue made by the parties.

"Our Code declares that 'the verdict, in every criminal action, must be general; where there are special pleas upon which the jury are to find, they must say, in their verdict, that the matters alleged in such pleas, are either true or untrue; where the plea is "not guilty," they must find that the defendant is either "guilty" or "not guilty"; and, in addition thereto, they shall assess the punishment in all cases where the same is not absolutely fixed by law to some particular penalty.' (Article 626.) It is manifest, from this provision, that the main matter involved in the duties of jurors under our system is still to find and declare the truth of the issue between the parties; and, having done this, their finding becomes the predicate for another thing incidental, 'and in addition thereto,' towit, the assessment of the punishment, in certain cases. The jury is not given the power to assess the punishment at discretion; but only according to the predicate they lay for it, by their finding of the issue. The court must be informed definitely of their finding on the issue, so as to see that their assessment was warranted. To infer that they found the defendant guilty of manslaughter in this case, because they assessed the punishment which is alone applicable to manslaughter, is to take it for granted that they have properly exercised their power of assessing punishment, without their having declared their finding on the issue, which could be the predicate for such assessment, and, indeed, when their finding of a general verdict of guilty, is inconsistent

with such assessment. This would be to allow and sanction the exercise of an incidental dependent power; not only without the necessary predicate being laid for it, but directly contrary to the predicate that was laid in their finding. It would abrogate the 630th article of the Code, requiring the jury to indicate the degree, in their verdict. A general verdict of 'guilty,' would apply as well to negligent homicide, as to manslaughter. If that is what they intended, the punishment assessed is excessive. And, on the other hand, if they meant what they have literally expressed, that he was guilty of murder, then they had no right to assess the punishment so low as they did. A verdict can not answer the purpose for which it is required, without a compliance with the plain requisitions of the Code, in designating the degree. With it, there is no security that the jury have properly exercised their discretion in assessing the punishment.

"Can we look to the facts in proof, and the charge of the court, in order to render certain, what the jury meant by this finding and assessment, which is in itself incongruous? A verdict is a response given by the jury, to the court, indicating their opinion of the correspondence of the facts in proof with those alleged, which constitute the issue between the parties. Such response has reference to the facts alleged. It may either entirely or qualifiedly affirm or negative them. The indictment, the plea, and the verdict thereon, constitute the record of the facts, judicially ascertained, upon which the judgment must be pronounced as a legal consequence. They must, taken together, be complete, to sustain a judgment, and must indicate the particular judgment which, under the law, can be pronounced. The facts in proof, and the charge of the court, were formerly not preserved, except as the mere notes of the judges, for use upon an application for a new trial, and constituted no part of the record. With us now they constitute no part of the record, except only for the purposes of revision by the Supreme Court, upon appeal. It is only after notice of appeal, that the statement of facts is required to be made and placed in the transcript. (Articles 729, 673.) The object of the statement of facts, and the charge of the court, is to show, the verdict rendered was contrary to the facts or the law, and that it should not have been rendered; not to correct any incongruity in the terms of the verdict, and reform it. To aid the verdict, by a resort to such sources of information, would be a departure from all the principles regulating the subject.

"The verdict and assessment of punishment, considered in connection with the indictment and plea, present a plain inconsistency, for which there is no certain solution. It is certain that the jury were mistaken in their duty. If they intended to find him guilty of murder, they were mistaken in the punishment which they had the power to assess; if they intended to find him guilty of manslaughter, as their assessment would indicate, they were mistaken in the manner of finding the issue, so as legally to convey that idea in the verdict. Therefore, their assess-

ment of punishment has no appropriate support, and can not be made the judgment of the court."

I could not add anything to this reasoning by the illustrious Roberts were I to try. It would be a work of supererogation to undertake to argue about a question, or to reason about or add to it where Judge Roberts had devoted his time and attention to and written upon the subject. I would hardly feel like appealing from a decision of Judge Roberts under such circumstances. The fact that he wrote and signed an opinion is authority to the legal and judicial mind of Texas. The opinion in the Slaughter case, supra, was followed in an opinion by Judge Moore, in the case of Buster v. State, 42 Texas, 315. Judge Roberts at that time was Chief Justice of the Supreme Court, and the opinion in the Buster case becomes a part of the jurisprudence of our country with his sanction. Since the rendition of the Buster case, so far as I am aware, the matters adjudicated in that and the Slaughter case, in regard to verdicts, has never been questioned until the opinion in this case by Judge Harper. Even Judge Prendergast, as late as the 62 Texas Crim. Rep., 648, in Burton v. State, recognized the correctness of the cases of Slaughter and Buster, and gave them the sanction of his approval. In the Burton case Judge Prendergast also referred, approvingly, to the case of McCloud v. State, 37 Texas Crim. Rep., 237. The opinion in the McCloud case was written by Judge Hurt. In that opinion Judge Hurt gave the sanction of his wonderful judicial mind to the correctness of the opinion in the Buster case. Quoting from the McCloud case I find this language: "The indictment charged appellant with the murder of Jeff Varner. The jury returned the following verdict: 'We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment at confinement in the penitentiary for life.'" This seems to be almost identical with the verdict found by the jury in the instant case. Judge Hurt continuing said: "This verdict is absolutely void, because it does not conform to the requirements of the statute, which reads: 'If the jury shall find any person guilty of murder, they shall also find by their verdict, whether it is of the first or second degree. . . . In the case of Buster v. State, 42 Texas, 315, Buster was charged with murder upon express malice. The verdict of the jury was, 'We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment to be hanged by the neck until dead.' Judge Moore, in that case, held the verdict fatally defective, because it did not name the degree of murder. That case is in all particulars the same as this, except that in that case the death penalty was assessed, and in this case the punishment was confinement in the penitentiary for life. Judge Moore reasons the question at some length very cogently, and suggests the reasons which prompted the Legislature to pass such an act. We can add nothing to what he has said upon this question. This court has invariably followed that opinion. In the language of Judge Moore: 'But, whatever may have been the motive for its enactment, thus it is plainly written in the

Code; and, until altered or repealed, it is evidently the duty of the court to observe and enforce it.'" I might follow these quotations from the various opinions that have been written from time to time, all in entire harmony. In Sanders v. State, 18 Texas Crim. App., 372, an opinion written by Presiding Judge White of this court, we find this language: "A verdict of guilty in a murder case is not valid under our Code unless it expressly finds, and declares explicitly and positively, the degree of murder of which the defendant is found guilty. Without the degree is thus found by the verdict, the verdict is an absolute nullity," citing Buster v. State, 42 Texas, 315; Dubose v. State, 13 Texas Crim. App., 418; Wooldridge v. State, 13 Texas Crim. App., 443; Clark's Crim. Law of Texas, p. 214, note "Verdict." This doctrine has been laid down in such a long array of authorities that it would seem like the question ought to be settled finally if a question can be settled. In support of the above cited case, I further enumerate the following as holding the statute mandatory: Colbath v. State, 2 Texas Crim. App., 391; Brown v. State, 3 Texas Crim. App., 294; Krebs v. State, 3 Texas Crim. App., 348; Dubose v. State, 13 Texas Crim. App., 418; Wooldridge v. State, 13 Texas Crim. App., 443; Armstead v. State, 22 Texas Crim. App., 51; McCloud v. State, 37 Texas Crim. Rep., 237; Isbell v. State, 31 Texas, 138; State v. Jackson, 99 Mo., 60, 12 S. W. Rep., 367; Sanders v. State, 18 Texas Crim. App., 372; Harbolt v. State, 40 S. W. Rep., 983; Martin v. State, 36 S. W. Rep., 11; Nettles v. State, 5 Texas Crim. App., 386; Brooks v. State, 42 Texas Crim. Rep., 347; Lyles v. State, 48 Texas Crim. Rep., 119; Zwicker v. State, 27 Texas Crim. App., 539; Johnson v. State, 30 Texas Crim. App., 419; Doran v. State, 7 Texas Crim. App., 385; Thomas v. State, 43 Texas Crim. Rep., 20; Burton v. State, 62 Texas Crim. Rep., 648; Orner v. State, 65 Texas Crim. Rep., 137, 143 S. W. Rep., 935; Branch's Crim. Law, section 842.

The opinion in the Burton case was written by Judge Prendergast, and delivered June 1, 1911. The Orner case was subsequently written, and is found reported in 65 Texas Crim. Rep., 137, 143 S. W. Rep., 935. Several of these cases charge the homicide to have been committed by poisoning. Under the statute, therefore, it was murder in the first degree. Johnson v. State, Brooks v. State, and Orner v. State, particularly, it is noted were cases of homicide by poison. In the Orner case I had the honor of writing the opinion, to which my brethren assented, and in which they fully concurred. In the Orner case there were suggestions made to the trial courts as well as the prosecution not to permit cases to come on appeal that contained verdicts of that character. It was in the face of the statute, which statute had been sustained, holding all such verdicts to be nullities. Judge Harper, in his opinion, says: "In many cases, which will be found collated in section 842 of Branch's Crim. Law, it will be seen that this court has held a verdict erroneous which fails to state the degree of murder of which the person on trial has been adjudged guilty. But in none of them has the case been

reversed because of this error alone." I am persuaded that the judge did not give the consideration of this matter the usual character of his investigation of subjects, for had he looked critically he would have found several cases where that was the only question decided, and in some of the cases the only point decided on which reversal took place. I note for instance in this connection the following cases: Colbath v. State, 2 Texas Crim. App., 391; Slaughter v. State, 24 Texas, 410; Isbell v. State, 31 Texas, 138; Nettles v. State, 5 Texas Crim. App., 386; Zwicker v. State, 27 Texas Crim. App., 539; Doran v. State, 7 Texas Crim. App., 385; Harbolt v. State, 37 Texas Crim. Rep., 639, 40 S. W. Rep., 998. It will be useless to pursue this phase of the matter further. There is the case of Holland v. State, 38 Texas, 474, which seems to hold to the contrary. I do not care to discuss that case. It was overruled in Buster v. State, supra, and from that day to this has not been recognized as authority by any court, so far as I have been able to ascertain, but as Judge Prendergast recently said in his dissenting opinion in the Harris case, "This was by the old semi-colon court," by which I suppose he meant it was not of very high dignity, and not to be quoted as authority. It may be that from the Buster case, supra, to the present time, our courts have not regarded the Holland case very favorably, because they took the first opportunity possible to overrule it, and it has passed since that time to the present into "innocuous desuetude."

Judge Harper, in writing the opinion for the majority, said: "We do not think the articles of the Code referred to call for or will bear such construction, but when the law says murder committed under given circumstances is murder in the first degree, and the court instructs the jury that if it was not committed in that way by the appellant to acquit, then to say that the verdict of guilty could be other than for murder in the first degree, seems to us an absurdity." What may be an absurdity under the provisions of the Constitution and statutory enactment might open up a field of discussion about which there might be varied conclusions, but I have always been taught that under our form of government where a Constitution provides that a thing shall be done, and the Legislature follows the constitutional mandate and provides means of carrying out that mandate, that it can not be an "absurdity" or a "technicality." In holding such things absurdities the sovereignty of a great people is overlooked. What might be absurd to some men may be the exercise of the sovereign will of the people asserting their majesty. It might look absurd that an indictment for felony must be returned by a grand jury and that grand jury to be composed of twelve men, no more and no less, but it is the sovereignty of a republican form of government speaking through her people. We would hardly feel like being justified in saying that the great reserved rights and inhibitions in the Constitution are "absurdities," when they form the basic principles of government. Article 1, section 10, of the Constitution, provides that the accused shall be tried by an impartial jury. Article 5, section 13, of that

same Constitution provides, that the jury shall return the verdict, and it provides that twelve men, no more or no less, shall return the verdict in a felony case. Carrying out the mandates of these provisions the Legislature has defined in articles previously cited what a verdict is, and both the Constitution and the statutes interdict the courts from passing judgment upon a citizen of Texas until the verdict of the jury has been returned, assessing the punishment at incarceration in the penitentiary in felony cases. No power has been conferred upon the courts to render verdicts; on the contrary, delegating that authority in the Constitution by the people to the jury is exclusive, and the courts would be powerless to render a verdict or change the verdict of a jury after it had been rendered. The court would be equally powerless to substitute his conclusion of what the verdict ought to be, or wording of that verdict after it had been rendered by a jury. As the jury returned the verdict into court, it shall remain. There is no power after the discharge of the jury to affect that verdict. Upon it the judgment must be formed and written, and the trial court nor this court or any appellate court in Texas would have any authority to modify, change or alter that verdict. The Legislature in obeying the mandate of the Constitution said that in murder cases the jury shall specify the degree of murder and assess the appropriate punishment to the degree after it is ascertained. The verdict in this case does not comply with that statute. The trial court below after the jury was discharged reassembled them and sought to rectify it. Judge Harper merely holds that this act was void, but what was void in that court he sustains by a judgment of the majority of this court; that is, he makes the verdict sufficient under the statute, which under the Constitution and statutory enactment could not be made in the trial court.

Judge Harper uses the following language in the opinion: "We have often heard discussed technicalities of the law. The writer is of the opinion that while some of the language used in some of the opinions may be said to be technical; yet, there are really no technicalities in the law. A matter is either erroneous or not, and if erroneous, and it could have resulted in hurt or harm to the person on trial, the case should be reversed." I wish to agree with a portion of the above quotation, that is, that there are no technicalities under our Constitution and written Codes. But he states the rule a little too strongly when he says that if "it could not have resulted in hurt or harm to the person on trial," then it would be a technicality. Of course, the judge does not mean that in the full scope which the language would imply. If he intends to carry it to its fullest extent, that language might be construed to mean that an indictment was not necessary; that that instrument need not begin "In the name and by the authority of the State of Texas," or conclude "against the peace and dignity of the State." These matters would not harm or hurt the defendant, because they do not bear upon his guilt, yet they are provisions of the Constitution, and no court has yet gone sufficiently far to say that they are either technicalities, ab-

surdities, or to be ignored or even suggest that they should be ignored. An indictment without these necessary statements would not be held valid by this or any other court. This is not so because it may hurt or harm the accused, but it is because it is the sovereign will of our people expressed in their Constitution. The same power that ordained these expressions in the Constitution created this court and the trial courts, and all the appellate system of courts.

I fully agree with Judge Harper in his statement that there are no technicalities in the law, constitutional or statutory. In Bond v. State, 20 Texas Crim. App., 421, Judge White, in this connection, uses this language: "The remark of the court was, to say the least, inconsiderate if not improper; and the explanation made to the jury of the remark was, in our opinion, much more objectionable and improper than the remark itself, because it was a charge that the attorneys were endeavoring, in their effort to get bill of exceptions, to obtain some technical advantage in the trial. They were either entitled to the bill or they were not, and it was the duty of the judge either to allow or refuse it, just as the right of the matter might be, without discussing the motives which prompted counsel in asking its allowance. It is a right given by law to a party to reserve exceptions to any adverse ruling he may deem erroneous; and no right accorded a party by law, especially in a criminal prosecution, is in any manner a technical right or advantage when properly availed of. The rules provided by the State for the government of criminal trials, when she seeks to hold her citizens amenable, are not technicalities if he insists upon a compliance with them on the part of the State. They are *rights,* and it is the veriest misnomer to call them *technicalities.* There are no technicalities in criminal law under a Code practice, where every step of the procedure is clearly provided for and defined." These expressions of Judge White were made in regard to remarks of a judge to attorneys of the accused, who were seeking to take a bill of exceptions. These matters were prohibited by the statute. If these are not technicalities, then I would be at a loss to understand how a verdict of a jury could be regarded as a technicality. There are two great fundamental principles involved in the question pertaining to verdicts: first, the trial by jury, to pass upon the facts with which the court has no concern, and can not even convey his impression without violating the plain principles of the statute. The second, the court charges the jury the law, and by this the jury must be governed. So we have those two great cardinal principles or definitions, first, the court is the judge of the law and must instruct the jury; second, that the jury are the exclusive judges of the facts proved, credibility of the witnesses, and weight to be given the testimony, and they alone can find a verdict, and this whether it be on general issues or special issues. I do not understand, in the face of the plain provisions of the articles of the Code above mentioned, how it can be held that these provisions can be ignored by the verdict of the jury, which could be in that instance no verdict, because contrary to the statute, and then when insisted upon be told that

it is "an absurdity." If the verdict of a jury that consigns a man to the gallows or penitentiary, and to cells of infamy, is an absurdity, it would be a difficult matter to know what would be a right.

For the reasons indicated I respectfully enter my dissent from this affirmance.


PRENDERGAST, Presiding Judge (concurring).—Before the original opinion by Judge Harper was handed down December 17, 1913, we fully and more than once considered in consultation this case and the questions therein. At that time Judge Davidson dissented, but did not then prepare any dissenting opinion. Promptly thereafter appellant made a motion for rehearing, and the case again was held in consultation for some time. On January 14, 1914, the motion for rehearing was overruled without any written opinion. At once after the motion for rehearing was overruled by the court, Judge Davidson filed his dissenting opinion. Neither Judge Harper nor myself had seen or knew of his dissenting opinion until after it was filed. Under the circumstances I file this concurring opinion,—so that, together with the original opinion of Judge Harper, it will be part of the opinion of this court.

In order to discuss the question fairly, I state what it is, how it is raised and how decided.

Our murder statute in force when this offense was committed and tried and which is the law of this case, is: "Article 1140, Penal Code, (old). Every person with a sound memory and discretion who shall unlawfully kill any reasonable creature in being within this State with malice aforethought, either express or implied, shall be deemed guilty of murder. Murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide or manslaughter, or which excuse or justify the homicide."

Article 1141 is: "All murder committed . . . with express malice . . . is murder in the first degree; and all murder not of the first degree is murder of the second degree."

Under all our decisions murder with *implied* malice is murder in the *second,* and can not be murder in the *first* degree.

The indictment alleges that appellant on April 7, 1913, "did unlawfully, with malice aforethought, kill L. T. Ammann by then and there shooting him with a pistol." This indictment under all the forms and under the statute and decisions of this State, in its face, expressly charges *murder in the first degree and nothing else.* It does not expressly charge murder in the second degree, nor manslaughter, nor negligent homicide in either degree, nor any other unlawful homicide or offense. These latter offenses, under the statute (C. C. P., arts. 771-2 [751-2]) as Judge Hurt said, *"are charged by inclusion,"* and not otherwise. (McGee v. State, 39 Texas Crim. Rep., 190.) No law writer or judge of this or any other Appellate Court in this State, has ever held otherwise in any case, unless it be Judge Moore in the Buster case hereinafter dis-

cussed. The other offenses are merely embraced by it "by inclusion" only, by virtue of the express provisions of the statute, and not otherwise. The statute (C. C. P., art. 771 [751]): "Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it) *but guilty of any degree inferior to that charged in the indictment.*" And (art. 772 [752]): "The following offenses include different degrees: 1. Murder which includes all the lesser degrees of culpable homicide."

Murder in the second degree, manslaughter and negligent homicide in either degree, are separate and distinct offenses from murder in the first degree,—expressly made so by our statutes and so held by every appellate judge in this State in every case where the question has been raised and decided. All text-book writers lay down as forms for indictments for each of these homicides under murder in the first degree, a different and distinct form from that of murder in the first degree.

Further. The *charge of the court,* in this case, submits to the jury for a finding, *only and solely, murder in the first degree.* It does not submit murder in the second degree, nor manslaughter nor negligent homicide in either degree, nor any other offense that might be "by inclusion" embraced in the said indictment. On the contrary, the record affirmatively shows that the trial judge refused expressly to submit murder in the *second* degree, or any other offense, than murder in the *first* degree. Nor did the court in his charge, either directly or indirectly, refer to murder in the *second* degree, or any other offense,— *solely and only murder in the first degree.* So far as the jury was concerned, in this case, they never heard of any such offense as murder in the *second* degree or any other character of unlawful homicide, or any other character of offense, other than *solely* that of murder in the *first* degree. In submitting ony murder in the first degree, the court expressly required the jury to believe beyond a reasonable doubt that the appellant "with *express malice aforethought* with a pistol, being a deadly weapon, or instrument well calculated to produce death by the manner in which it was used, with a sedate and deliberate mind and formed design to kill, did unlawfully shoot with a pistol and thereby kill said L. T. Ammann, you will find him guilty of murder in the first degree and so state in your verdict, affixing the penalty therefor." Then told them that the punishment for this offense is death, or confinement in the penitentiary for life, as the jury may determine and state in their verdict. The charge did not tell the jury what the penalty or punishment was for any other offense.

The verdict is: "We, the jury, find the defendant *guilty as charged in the indictment* and assess his punishment at confinement in the State penitentiary *for life.*" Under the law and the facts and circumstances of this case, there can be no shadow of doubt that by this verdict the jury found the appellant guilty of murder in the "first degree," and of nothing else. And there can be no shadow of doubt or uncertainty that this verdict so finds. As much so and with as absolute certainty

as if they had, in the face of the verdict, included the words "first degree" one time, or a hundred times.

It is true that the statute (P. C., art. 1142) expressly requires, "if the jury shall find any person guilty of murder they shall also find by their verdict, whether it is of the first or second degree."

Our law commands: "The provisions of this Code *shall* be *liberally* construed so as to attain the objects intended by the Legislature; the prevention, suppression and punishment of crime.", (C. C. P., art. 25.) It also commands: "This Code, and *every other law* upon the subject of crime which may be enacted *shall* be construed according to the plain *import* of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects." (P. C., art. 9.) It also declares, the Code seeks, "to exclude the offender from all hope of escape, and the certain execution of the sentence of the law when declared." (C. C. P., art. 1.) Even in an indictment the language of which is, at least, as important and as necessary as that of a verdict, our law says: "Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the *same* meaning, or which include the *sense* of the statutory words." (C. C. P., art. 475.)

Then, under the law, how is said article 1142 to be understood and construed? So that a verdict in a murder case is void—absolutely so—unless it contains the words, "first degree" or "second degree," as the case may be? Most assuredly not. The words "first degree," in this statute, have no talismanic force or effect. Any other words which have the same certain meaning are of equal force and power and find the "first degree" with as absolute certainty as these two words themselves could do. It is as true in law as in mathematics, that "things which are equal to the same thing, are equal to each other." "Twelve months" is precisely the same thing as "one year." Mitchell v. State, 2 Texas Crim. App., 404.

As shown above, the indictment charged *expressly, murder in the first degree, and murder in no other degree,* nor any other character of unlawful homicide. The charge of the court submitted to the jury for a finding, *only and solely murder in the first degree and expressly refused to submit murder in the second degree,* or any other unlawful homicide. The jury expressly said in response to this indictment and charge of the court, we find the defendant guilty *"as charged in the indictment"* and they did not find him guilty otherwise. Besides, they assessed his punishment at confinement in the penitentiary for *life,* which is the punishment which could be assessed only for murder in the first degree, and could not be inflicted for murder in the second degree, nor for any other unlawful homicide. So that, as stated above, there can be no shadow of doubt or uncertainty, that the jury in this case found the defendant guilty of murder in the *first degree, and that only,* and of no other offense or grade of offense. Every reasonable person would absolutely *know,* from all this, that this verdict found appellant guilty of murder

in the first degree, and solely that; and what every other person knows, the judges of this court must know, and can not be ignorant of, or uncertain about.

Judge Davidson contends in his dissenting opinion that this verdict is absolutely void because it did not have the words "first degree" therein. And proceeds to cite may cases, beginning back with the case of Slaughter v. State, 24 Texas, 410, written by Judge Roberts, and follows that with the case of Buster v. State, 42 Texas, 315, written by Judge Moore; then cites other cases. As I understand, his opinion is based, and the other cases he cited are also based, upon these two decisions, written by these illustrious and great judges, and the statute. I heartily concur in his eulogy of each of these judges. When rightly considered, and in connection with the facts shown by the respective cases in which these two opinions were written, they are not in conflict with the opinion and holding in this case. For lack of time and because unnecessary, I can not take up, state and discuss the other decisions cited by Judge Davidson, which he says follow these two opinions, nor show that none of them are in material conflict with the decision in this case. Most of them certainly are not; possibly some of them may be; but if so they are clearly wrong and should not be followed. But I will take up, state, discuss and show what these two opinions decide and under what circumstances they were written.

In the Slaughter case it is shown, without doubt and without question, that murder in the second degree and manslaughter, and perhaps negligent homicide in one or the other, or both degrees, were clearly raised by the evidence; and that murder in the second degree and manslaughter, at least, as well as murder in the first degree, were submitted by the court to the jury for a finding. The jury found this verdict: "We, the jury, find the defendant guilty and assess the punishment at confinement in the State penitentiary for the term of twelve months." Under the facts and circumstances of that case the court correctly held that from that verdict it could not be told of what offense the jury found the defendant guilty. Certainly, by no express statement in it, did they find appellant guilty of either murder in the first degree, murder in the second degree or manslaughter. The lower court, as the opinion says, construed that verdict to be for manslaughter, by considering the facts in proof and the charge of the court, as well as by the punishment assessed—the punishment applying to manslaughter only and to none of the other offenses submitted. Judge Roberts in the opinion, in substance and in effect, on this point, held that it could not be told with certainty of what offense that verdict found the defendant guilty. There is no question of the correctness of that holding. *That* case is not *this* case, nor anything like it. The indictment in that case was for murder in the first degree. Judge Roberts expressly states in that opinion: "*A general verdict of guilty on such an indictment under such a rule would be a finding of the defendant guilty of murder, the highest degree charged.*" (Italics mine). The holding in this case is

in exact accordance with what Judge Roberts said just quoted above, with the additional facts in this, which were not in that, that murder in the first degree only and solely was charged by the indictment, submitted to the jury for a finding by the court in his charge and responded to expressly by the jury in their finding.

But Judge Roberts also, in that opinion, held that the charge of the court was no part of the record and could not be looked to in order to render certain what the jury meant by their finding. In this holding he was clearly and without doubt in error. While, as stated above, I heartily concur in Judge Davidson's eulogy of Judges Roberts and Moore, they, like all other men, whether great or small, high or low, were not infallible. Infallibility attaches to no human being, and never did, and never will. Infallibility is an attribute of Deity only. In holding that the charge of the court was not a part of the record and could not be looked to for the purpose of ascertaining what the jury meant by its verdict, Judge Roberts has been overruled uniformly and by a great many decisions of this court; and on principle, as well as authority, he was in error in that holding.

In felony cases our statute imperatively requires that charges shall be given in writing. This is always done. I know of no case where a charge other than in writing was ever given in a felony case. The jury not only are permitted, but universally take this written charge with them in their retirement in consideration of their verdict. It is essential that they should do so. When no documentary evidence is introduced, the charge and the indictment are the only papers in a criminal cause that the jury do take with them. It would be impracticable, if not impossible, for the jury to give proper consideration to the case, unless they did take with them the written charge of the court. It is their guide, and only guide, in directing them what they must do and what they must not do, with reference to the particular case under consideration. So far as that case is concerned they know no law except what is told them by the court in this written charge. They can not know it otherwise. *So that necessarily the verdict must be considered in connection with the charge.* Even more so than in connection with the indictment itself.

On this subject this court in Marshall v. State, 4 Texas Crim. App., 553, said: "We can look to the charge of the court in construing the verdict. The charge is a part of the record in the cause. It is in writing, and is handed to the jury on their retirement. To it they necessarily look in considering their verdict. In our practice the essential idea of a charge is that it is authoritative as an exposition of the law, which the jury, under their oaths, are bound to obey. Chester v. The State, 1 Texas Crim. App., 702; Patterson v. Allen, 50 Texas, 23."

In Hutto v. State, 7 Texas Crim. App., 44, this court, through Judge White, said: "A remaining ground urged in the motion in arrest is that the verdict of the jury does not find the defendant guilty of 'theft of cattle,' but guilty of 'theft' only. The position is not well taken;

the verdict is not only certain, but in every respect responsive to the issue before the jury. Were there any doubt in the premises, this case would come within the rule announced in Marshall v. State, 4 Texas Crim. App., 549, viz., that 'the charge to the jury may be looked to for the purpose of ascertaining the offense of which their verdict in such a case convicts the accused.' "

In Nettles v. State, 5 Texas Crim. App., 386, this court, through Judge White, again said: "This court has more than once held that where there was a general verdict of guilty, imposing punishment foi a lesser degree than that charged in the indictment, it would be sustained if upheld *by reference to the issues made and submitted by the charge of the court to the jury.*"

I can not undertake to cite even a moderate number of the cases decided by this court to the same effect, but I will cite one or two others. I will come down to a later date. In Styles v. State, 37 Texas Crim. Rep., 599, this court, through Judge Davidson, said: "Appellant was charged with and convicted of an aggravated assault, and fined $25; hence this appeal. It is contended that the verdict is vague, indefinite, uncertain, and not sufficiently specific to support the judgment based upon it. It reads as follows: 'We, the jury, find the defendant guilty as in the indictment,' etc.; the weakness in said verdict being found in the fact that the word 'charged' is omitted between the words 'as' and 'in.' There is nothing in this contention. The verdict is sufficiently specific, and clearly exhibits the intent of the jury. It is also contended that the verdict is insufficient, inasmuch as it does not sufficiently specify the grade of assault of which it is intended to find defendant guilty, because the charge of aggravated assault embodies within it a charge of simple assault, and the conviction may have been for the smaller offense. We think this alleged error is without merit. *The charge of the court submits only the offense of aggravated assault. The issue of simple assault was not before the jury. They were not authorized to pass upon it, and were not charged with reference to it.* Under this state of case, the verdict is sufficiently specific and certain, and is responsive to the charge and the testimony." To precisely the same effect is Millard v. State, 59 S. W. Rep., 273, in an opinion written by Judge Davidson. See also Vincent v. State, 10 Texas Crim. App., 330; Foster v. State, 21 Texas Crim. App., 80. It would be a useless consumption of time to collate the many cases to the same effect, wherein opinions to this effect have been written by each and every member of this court from its foundation down to the present time. This court almost daily acts on cases where this principle is in force and is applied.

I will now discuss the Buster case, supra. It is bottomed on said Slaughter case. There is no full report of the facts, nor questions raised, or submitted in the charge of the court, but it is perfectly clear from the opinion itself that murder in the second degree, as well as in the first degree, was raised in that case and the court submitted a charge

to the jury thereon, for Judge Moore, in starting the opinion, says: "The court was not required, by the facts of this case, to instruct the jury on the law applicable to homicide below the grade of murder. The charge given by the court, as it seems to us upon a general consideration of it, presented the distinction between murder in the first and murder in the second degree correctly, and with such reasonable clearness and applicability to the evidence as the necessities of the case required." The jury in that case found this verdict: "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment to be hung by the neck until dead." As stated above, Judge Moore on the authority of the Slaughter case, and the statute, held that this verdict was too uncertain to predicate a judgment upon it. His argument and reasoning indicates clearly, that because murder in the first, and murder in the second, degree, *both* were submitted for a finding, that he could not tell of which degree they found defendant guilty. And he said in effect, that he could not tell whether they made a mistake as to the degree or penalty for, he said, to support the judgment, the court must be able to see from the verdict that it authorized and required a penalty fixed by law, or the penalty assessed by the jury is warranted by law, and "that the jury are not mistaken in the character or degree of the offense of which they have in fact found defendant guilty and imposed a penalty not fixed by law." Again, he said: "The only hypothesis upon which, with the least degree of plausibility, we can look to the penalty assessed by the jury, to determine the degree of guilt found by the verdict of 'guilty' is, that the jury could not have mistaken the law through ignorance or wantonness, and could not have been deceived or misled through prejudice or passion." In answering the argument that the jury found the defendant guilty, "as charged in the indictment" and that as the indictment expressly charged murder in the first degree, and, therefore, the verdict found him guilty of murder in the first degree, he said: "To this it is sufficient to answer, that indictments in the usual form charge murder in the first degree as well as in the second." In this he was clearly in error. As we have shown above, an indictment for murder in the *second* degree, under our statute, as laid down by all authors on forms, does not charge murder in the *first* degree, but charges only murder in the *second degree,*—an entirely separate and distinct and lower offense. But I might concede that the decision in the Buster case is correct, and yet, *that* case is not *this* case. In that, murder in the *first* and *second* degree, *both was raised and both submitted.* In this, the evidence without doubt raised only, murder in the first degree, murder in the *first* degree *only* was charged in the indictment, alone submitted in the charge of the court, and the verdict of the jury found him "guilty as charged," which is murder in the first degree and that alone, and assessed a punishment that was for that offense and that alone, and could not have been assessed for murder in the second degree, nor for any other lower grade of unlawful homicide.

But, again, Judge Davidson, in his dissenting opinion, says: "Even

Judge Prendergast, as late as the 62 Texas Crim. Rep., 648, in Burton v. State, recognized the correctness of the cases of Slaughter and Buster, and gave them the sanction of his approval. In the Burton case Judge Prendergast also referred, approvingly, to the case of McCloud v. State, 37 Texas Crim. Rep., 237." It is true that I did refer in the Burton case to these cases, but I distinctly distinguished those cases from the Burton case, stating: "Each of these cases were murder cases in which the court submitted the various offenses in some, or all of them, of murder in the first and second degree, manslaughter, etc., wherein the verdicts in those particular cases were held insufficient because the jury did not designate which grade of the offense they found the defendant guilty of." Again, in the same case, I said:

"It is now the well established doctrine of this court, and is clearly the law applicable to the construction of verdicts, that they are to have a reasonable intendment and construction, and are not to be avoided, unless from necessity originating from doubt of their import or immateriality of the issue found. Walker v. State, 13 Texas Crim. App., 618; McMillan v. State, 7 Texas Crim. App., 100; Bland v. State, 4 Texas Crim. App., 15; Williams v. State, 5 Texas Crim. App., 226; Partain v. State, 22 Texas Crim. App., 100. And that in construing a verdict the object is to arrive at the meaning of the jury. Chester v. State, 1 Texas Crim. App., 702. Technical and unsubstantial objections to a verdict will not be considered in determining its sufficiency. Reynolds v. State, 17 Texas Crim. App., 413, and cases cited above.

"Therefore, both on reason and authority, we hold that the verdict in this case is not uncertain, but clearly finds the defendant guilty of theft of property over the value of fifty dollars. McGee v. State, 39 Texas Crim. Rep., 190; Vincent v. State, 10 Texas Crim. App., 330; Cohea v. State, 11 Texas Crim. App., 153." The verdict and opinion in the Burton case are, in principle, practically the same as this case.

Again, Judge Davidson calls attention to the fact that the opinion in the McCloud case was written by Judge Hurt. Judge Davidson says: "In that opinion Judge Hurt gave the sanction of his wonderful judicial mind to the correctness of the opinion in the Buster case." I think Judge Davidson is mistaken in this. Judge Hurt merely *followed,* without giving "the sanction of his wonderful judicial mind" to the Buster case. If he did, he later radically changed his mind upon a fuller and more deliberate consideration thereof, for in McGee v. State, 39 Texas Crim. Rep., 190, he "gave the sanction of his wonderful judicial mind" to the reverse of the Buster case, and was aided and had the sanction of the other two eminent members of this court at that time,—Judge Davidson and Henderson. In the McGee case, through the mouthpiece of Judge Hurt, he and Judges Davidson and Henderson, said:

"Appellants were charged with rape upon Martha Green. The jury returned the following verdicts: 'We, the jury, find the defendant, Prada McGee, "guity" as charged in the indictment, and assess his punishment at *confindment* in the State *Penitenitory* for a *tearm* of fifty

years. T. A. Smith, Foreman.' And: 'We, the jury, find the defendant, Maryland Fuller, *"guily"* as charged in the indictment, and assess his punishment at *confidment* in the State *pentenitory* for a term of fifty years. T. A. Smith, Foreman.' *The court submitted to the jury rape and assault to rape.* The punishment for assault to rape is confinement in the penitentiary for any term not less than two years; the punishment for rape is death, or confinement in the penitentiary for life, or any term of years not less than five. Fifty years confinement in the penitentiary is a legal punishment for either offense. Rape includes an assault with intent to commit rape. Now, the contention of appellant is that the above verdicts are insufficient to support the judgments; that, as fifty years may be the punishment for an assault to rape, and as rape and assault to rape were submitted to the jury, the verdicts should have stated for which offense the defendants were convicted. This proposition is absolutely correct. *But the question is whether the verdicts fail to so state.* Article 751, Code Criminal Procedure, provides: 'Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree, naming it, but guilty of any degree inferior to that charged in the indictment or information.' The question is not before us as to whether the jury convicted the defendant of a lesser degree than that charged. *The question is whether the jury convicted the parties of the degree charged in the indictment in this case.* What was the higher degree charged in the indictment? Evidently it was not an assault with intent to rape, but was rape. Now, how do the verdicts read? 'We, the jury, find the defendant *"guity"* as charged in the indictment.' *The charge in the indictment was for rape. Assault with intent to rape was charged in one sense, which was by inclusion. It evidently was not charged directly,* for, if so, article 751 could never have any practical operation. This article expressly provides that the accused can be convicted of an inferior degree to that *charged in the indictment.* Now, if this inferior degree was not charged in the indictment, either directly or by inclusion, the parties could not be convicted legally at all, because a conviction can not be legal without allegations. This article settles the question. It draws the distinction clearly between *the charged degree,—that degree which is set forth in the indictment and that degree of offense which is charged by inclusion.* If assault to rape was charged in the indictment, within the meaning of this article, so was aggravated assault and simple assault, and so was an attempt to rape. If, then, these degrees were all charged, within the meaning of this article, to give the article practical effect the accused could be convicted of some offense not charged at all. To restate: We understand article 751 to draw a distinction between the *degree* which is charged *directly and affirmatively in the indictment* and the lesser degrees of the same offense, *which are charged by inclusion.* This article says that in substance by stating: 'But guilty of any degree inferior to that charged in the indictment or information.' Now, the verdicts in

this case find the defendants guilty as *'charged in the indictment'; and when we look to the indictment nothing is affirmatively charged except rape.* While it is true, he is charged with assault to rape, aggravated assault, etc., *by inclusion,* yet that manner of charging is not that which is meant by article 751, but it means *directly and affirmatively charged.* The verdict is the same as if it were, 'We, the jury, find the defendant guilty of rape,' because it says that which is *the equivalent thereto.* 'We, the jury, find the defendant guilty as *charged in the indictment,'* which is *rape, and nothing else.* Let us suppose that the appellants on another trial should interpose a plea of acquittal of rape. Their plea would be worthless. Why? Because the jury have convicted of rape, the offense charged in the indictment. We do not wish to elaborate this question any further.

"We have examined the case of Slaughter v. State, 24 Texas, 410, and we do not believe the views above expressed antagonize the opinion of Judge Roberts in that case. On the contrary, we believe the reasoning in that case is in consonance with this opinion. We also believe that we are supported by the opinion of the court in Nettles v. State, 5 Texas Crim. App., 386. However, the case of Guest v. State, 24 Texas Crim. App., 530, holds the contrary view to those herein expressed, and we accordingly overrule said case.

"Appellant contends that the verdicts of the jury should be held null and void because certain words are misspelled. We quote the verdicts as follows (both being alike) : 'We, the jury, find the defendant "guity" as charged in the indictment, and assess his punishment at *confindment* in the State *penitenitory* for a term of fifty years.' Formerly this character of verdict was held so uncertain in its terms as not to afford the basis of a judgment, and a number of cases were reversed on the imperfect spelling of the word 'guilty.' See Taylor v. State, 5 Texas Crim. App., 569; Curry v. State, 7 Texas Crim. App., 91; Wilson v. State, 12 Texas Crim. App., 481; Harwell v. State, 22 Texas Crim. App., 251. But since the rendition of the last mentioned case the rule has been different. This court has held a number of verdicts in which the word 'guilty' was misspelled, being written in some 'guitty,' 'guily,' 'guilty,' sufficient; the rule being that, *where the sense is clear,* neither incorrect orthography nor ungrammatical language will render a verdict illegal or void, *and that it is to be reasonably construed, and in such manner as to give it the meaning intended to be conveyed by the jury.* See Birdwell v. State (Texas Crim. App.), 20 S. W. Rep., 556; Shelton v. State, 27 Texas Crim. App., 443; Stepp v. State, 31 Texas Crim. Rep., 349; Attaway v. State, 31 Texas Crim. Rep., 475; Roberts v. State, 33 Texas Crim. Rep., 83; Harris v. State (Texas Crim. App.), 34 S. W. Rep., 922; Price v. State, 36 Texas Crim. Rep., 403. *We have been particular to cite the authorities, so that hereafter no one may claim to have been misled through ignorance as to what the holdings of this court have been on this subject.* A little care and attention on this subject would save this court much trouble as to matters of this char-

acter. The judgment is affirmed." (In quoting this opinion all the italics are mine.)

The McGee case can not be distinguished from this case. The decision in the McGee case has never been modified, qualified, distinguished, nor overruled, but many times approved "even as late as in the Burton case 62," supra, and also in Willingham v. State, 62 Texas Crim. Rep., 55, and Day v. State, 62 Texas Crim. Rep., 527. The logic and argument of Judge Hurt and his associates therein is unanswerable. It applies fully and wholly to this case. He and Judges Davidson and Henderson even go further in that case than Judge Harper and I go in this case. There, not only was *rape,* submitted to the jury for a finding, but also *assault to rape* was submitted by the court's charge. In this, *only murder in the first degree was submitted.* Murder in the second degree was not submitted nor any other unlawful homicide.

Again, in every criminal case, it is necessary that the verdict shall find the defendant "guilty." This is absolutely essential. No verdict could stand without it. In the earlier decisions of this court, as shown by Judges Hurt, Davidson and Henderson, in the McGee case, this court reversed cases because the verdicts, instead of finding the defendants "guilty" found them "guitty," "guily," "guitly," but they in the McGee case, overruled all such decisions.

Again, Judge Davidson, in his dissenting opinion, calls attention to the case of *Holland v. State, 38 Texas, 474,* which is absolutely in point in this case, and the reasoning thereof is unanswerable, and the conclusion reached is, without any doubt, correct. But Judge Davidson says he will not discuss that case because it was overruled in the Buster case, and says: "But as Judge Prendergast recently said in his dissenting opinion in the Harris case, 'this was by the old semi-colon court,' by which I suppose he meant it was not of very high dignity, and not to be quoted as authority." The Harris case is reported in 160 S. W. Rep.. 447. Judge Davidson in that case, cited as authority, *State v. Butler, 38 Texas, 560,* and claimed that case as authority for his holding in the Harris case. The Butler case, as I showed in the Harris case, was not in point and should not be construed as supporting Judge Davidson's opinion in that case. I think, he is therefore clearly estopped from contending in this case that I ought not to rely upon the decision of said court in the *Holland case,* which clearly and without doubt decides the identical question that is in this case, and was the question and the only question in that case for decision; for he not only relied on the decision in the *Butler case* by the same court in the same volume of Reports, but went further and held that case, which was not in point therein, was authority. The difference between us in that and this case is: He held as authority, the *Butler case,* which was not in point, and now holds that the *Holland case,* in the same volume by the same court, which is directly in point, is not authority. Whereas, I held in the Harris case that the Butler case was not authority, and it was not, but hold that the Holland case is authority and directly in point.

I want it distinctly understood that in all murder trials under the old statute, that the lower courts should see that the verdicts read guilty of murder in the *"first degree"* or in the "second degree," as the case may be, not only because the statute says so, but to avoid just such a question as arises and is urged in this case.

This opinion is much longer than I intended. I certainly regret its length. I fully concur in Judge Harper's opinion and the affirmance of this case.